# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 22-160V**
**Filed: March 6, 2026**

|  |
|---|
| MURIEL J. DUVAL,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. |

*Christopher J. Webb, Black, McLaren, Jones, Ryland & Griffee, Memphis, TN, for petitioner.*
*Kelly Danielle Burdette, Burdette Law, North Bend, WA, former counsel for petitioner.*
*Rachelle Bishop, U.S. Department of Justice, Washington, DC, for respondent.*

### <u>DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS</u>[1]

On February 3, 2026, petitioner's departing counsel, Mr. Webb, filed the instant motion for an award of interim attorneys' fees and costs in the amount of $91,935.09. (ECF No. 73.)  An additional motion for an award of interim attorneys' fees and costs in the amount of $22,287.93 had previously been filed by petitioner's prior counsel, Ms. Burdette.  (ECF No. 41.)  For the reasons discussed below and resolving both motions, the undersigned awards petitioner interim attorneys' fees and costs in a reduced amount for petitioner's prior counsel and in full for current counsel.

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

### I.    Procedural History

On February 15, 2022, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012),[2] alleging that she suffers a left shoulder injury related to vaccine administration ("SIRVA") as a result of a tetanus-diphtheria-pertussis ("Tdap") vaccination received on August 28, 2020.  (ECF No. 1.) The case was originally assigned to the Special Processing Unit ("SPU").  (ECF Nos. 17-18.)

At the outset of the case, petitioner was represented by Burdette Law, first by Mr. Burdette and later by Ms. Burdette.  They filed medical records on behalf of petitioner between March of 2022 and April of 2023.  (Exs. 1-15.)  Thereafter, the parties discussed settlement for several months before respondent filed a Rule 4(c) Report, recommending against compensation, in December of 2023.  (ECF No. 37.) Respondent contended that petitioner's condition was not limited to her affected shoulder, as required of a Table SIRVA, and that her condition was explained by a neurologic condition.  (*Id.* at 8-12.)

Following the filing of respondent's report, the case was reassigned out of the SPU and to the undersigned.  (ECF Nos. 38-39.)  Petitioner was then directed to file a status report indicating how she proposed to proceed and, specifically, whether she intended to pursue a claim related to a musculoskeletal or neurologic injury.  In response, she advised that "petitioner and counsel for petitioner have been consulting with attorneys to assume representation of petitioner and to assist petitioner with a resolution of her claim."  (ECF No. 40.)  In a follow up status report, it was reported that petitioner had been unsuccessful in seeking new counsel.  (ECF No. 41.)  A status conference was therefore held.  During the status conference, petitioner's counsel confirmed she would continue to represent petitioner and that she intended to pursue informal resolution based on a SIRVA.  (ECF No. 42.)  However, because respondent intended to defend against that claim, petitioner was instead directed to file an expert report.  (*Id.*)  It remained uncertain whether petitioner would pursue a musculoskeletal or neurologic injury.  (*Id.* at n. 1.)

On June 13, 2024, petitioner filed a letter by her treating physician, Dr. Liang, opining that, although he initially diagnosed shoulder bursitis, what petitioner suffered was a vaccine-caused brachial neuropathy.  (Ex. 16.)  In response, respondent filed an expert report by orthopedist Paul Cagle, M.D., opining that petitioner's condition is neither SIRVA nor brachial neuropathy (Ex. A), as well as an expert report by neurologist Peter Donofrio, M.D., opining that petitioner's condition does not meet the Table criteria for brachial neuritis (Ex. C).  In a follow up order of December 2, 2024, the undersigned noted that either SIRVA, as petitioner pleaded was present, or brachial neuritis, which her treating physician opined was present, could under the right circumstances represent a Table injury; however, they are mutually exclusive given that SIRVA by definition excludes neurologic injuries.  (ECF No. 52.)  I directed the parties to

---

[2] Within this decision, all citation to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

2

clarify whether the case would proceed as a brachial neuritis claim and, if so, to file amended pleadings, but in either event, further expert reports would be necessary once the claim was clarified.  (*Id*.)

In response to being directed to file an expert report, petitioner's counsel filed a status report indicating she intended to withdraw as counsel and for petitioner to continue pro se.  (ECF No. 53.)  A follow-up status conference was held with petitioner and counsel for both parties on January 3, 2025.  (ECF No. 54.)  During the status conference, "[p]etitioner's counsel indicated that, in light of the feedback in the December 2, 2024 order, she did not believe she had the ability to successfully prosecute the claim given that securing Dr. Liang's letter was the most she had intended to do." (*Id*. at 1.)  Given this, the undersigned advised petitioner that, without providing guidance as to whether a brachial neuritis claim would ultimately be viable, "Dr. Liang's letter is likely sufficient to confer a reasonable basis for ongoing exploration of a potential brachial neuritis claim." (*Id*. at 2.)

Ms. Burdette filed a motion seeking interim attorneys' fees and costs on January 24, 2025.  (ECF No. 55.)  Shortly thereafter, Mr. Webb filed a consented motion to be substituted as counsel.  (ECF No. 56.)  Respondent later filed a response to Ms. Burdette's motion, deferring to the undersigned with respect to both the appropriateness and amount of any interim award of fees and costs.  (ECF No. 57.)  However, on July 11, 2025, an order deferring ruling on the motion for interim attorneys' fees and costs was issued.  (ECF No. 61.)  The undersigned concluded that there had not been any demonstration of undue hardship to warrant an interim award, both given the amount at issue, as well as the fact that Ms. Burdette had exited the case prematurely "due solely to her own expressed shortcomings and unwillingness to personally continue prosecuting the case." (*Id*. at 2.)  Accordingly, the motion was deferred "until such time as the undersigned is called upon to address attorneys' fees and costs for current counsel, whether on an interim or final basis."  (*Id*.)

Current counsel was initially permitted a period of about 9 months, from March to November of 2025, within which to file an expert report to support the claim.  However, no expert report was filed.  After counsel filed updated medical records (Ex. 20) in August of 2025, counsel advised within a motion for extension of time that petitioner again intended to seek new counsel.  (ECF No. 64.)  Petitioner reportedly had "personal reservations" with respect to whether her correct diagnosis was SIRVA, brachial neuritis, or some other neurologic injury, and wanted to seek out an alternative expert with new counsel.  (*Id*.)  Counsel was directed to continue assisting petitioner in filing updated medical records and the undersigned advised that the reasonable basis for the claim would be reassessed based on a review of those records.  It was further advised that, absent an indication petitioner intended to take the case in a direction supported by a reasonable basis, an order to show cause would be issued.  (*Id*. at 2.)

Petitioner then filed additional medical records.  (Exs. 21-24.)  Thereafter, in a further scheduling order, the undersigned indicated that, though still "highly skeptical" of a SIRVA allegation, petitioner would be permitted "some latitude to develop the record

of this case as she sees fit," given her most recent orthopedic evaluation.  (*Id*.)  Petitioner's updated orthopedic records had shown that she was diagnosed with shoulder impingement and that her MRI of September 8, 2025, confirmed the presence of shoulder pathology.  (Ex. 21, p. 15.)  However, the undersigned noted that "[t]he fact that petitioner had shoulder pathology visible on MRI years after the fact does not necessarily mean that pathology is the most likely explanation for her earlier symptoms" and if petitioner retains an expert in pursuit of a musculoskeletal injury "the expert must credibly grapple with the evidence of a neurologic cause for petitioner's symptoms."  (ECF No. 67, p. 1.)

Thereafter, counsel filed the remainder of petitioner's outstanding medical records (Exs. 25-27, 29-30), along with a written statement by petitioner (Ex. 28), before then filing a motion seeking an award of interim attorneys' fees and costs, as well as a motion to withdraw as counsel.  (ECF Nos. 73-74.)

Initially, despite suggesting he intended to raise arguments both with respect to whether the petitioner maintained a reasonable basis and challenging the amount of the fees and costs incurred, respondent sought to defer providing a substantive response to petitioner's motion until the case was resolved, suggesting the reasonable basis would be better assessed after entitlement was addressed.  (ECF No. 77.)  However, the undersigned directed respondent to file a substantive responsive before petitioner's counsel was ultimately removed from the case (ECF No. 78), which he did (ECF No. 79).  Petitioner then filed a reply.  (ECF No. 80.)

Accordingly, both of the pending motions for awards of interim attorneys' fees and costs are now ripe for resolution.

## II.    Party Contentions

The first motion for an award of interim attorneys' fees and costs, filed by Ms. Burdette, seeks $19,555.30 for attorneys' fees and $2,732.63 for costs, for a total award of $22,287.93.  (ECF No. 55, p. 3.)  Counsel requests $400 per hour for work performed by Mr. Burdette, $275 per hour for work performed by Ms. Burdette, and $132 per hour for work performed by paralegals.  (*Id.*)  Apart from noting that the requested rates have been previously awarded, this motion does not present any argument on any potential issue.  (ECF No. 55, pp. 1-4 (citing *McDaniel v. Sec'y of Health and Human Servs*., No. 17-1322, 2024 WL 4043683 (Fed. Cl. Spec. Mstr. May 24, 2024)).)  The requested costs include the petition filing fee, the cost of obtaining medical records, and a $1,500.00 consulting fee to Dr. Liang.  (ECF No. 55-2.)  In connection with this motion, petitioner advised that she had not personally incurred any costs.  (ECF No. 55-3.)  As noted above, respondent's response defers to the undersigned with respect to whether the legal requirements for an interim award of fees and costs are met as well as the reasonable amount of any such award.  (ECF No. 57.)

The second motion for an award of interim attorneys' fees and costs, filed by Mr. Webb, seeks $72,799.40 in attorneys' fees and $19,135.69 for costs, for a total award

of $91,935.09.  (ECF No. 73, p. 1.)  In the motion, counsel explains that the requested costs include costs associated with securing two different expert reports, one by neurologist Joseph Jeret, M.D., who charged $500 per hour, and one by orthopedist Uma Srikumaran, M.D., who charged $1,000.00 per hour.  (*Id*. at 3.)  However, no expert report was filed because irreconcilable differences arose between petitioner and her counsel with respect to how to present the case.  (*Id*. at 4.)  Petitioner asserts that the remaining costs are all reasonable litigation costs, most notably including travel costs for in person meeting with petitioner.  (*Id*. at 4-5.)  Petitioner asserts that the requested hourly rates have been previously awarded (apart from 2026 rates).  (*Id*. at 5-9.)  Specifically, petitioner requests rates as indicated in the chart depicted below:

| Name | Title | Year | Hours | Rate | Total |
|---|---|---|---|---|---|
| Michael G. McLaren | Partner | 2025 | 0.70 | $584.00 | $408.80 |
| William E. Cochran, Jr. | Partner | 2026 | 1.00 | $559.00 | $559.00 |
| Chris J. Webb | Partner | 2025 | 123.90 | $472.00 | $58,480.80 |
| Chris J. Webb | Partner | 2026 | 18.40 | $509.00 | $9,365.60 |
| Sarah L. Clarke | Paralegal | 2025 | 10.80 | $199.00 | $2,149.20 |
| Sarah L. Clarke | Paralegal | 2026 | 5.30 | $215.00 | $1,139.50 |
| Rhonda Friedrichsen | Paralegal | 2025 | 3.50 | $199.00 | $696.50 |

(*Id*. at 9.)  Petitioner again confirmed that she incurred no personal costs.  (ECF No. 73-3.)

In response to the second motion, respondent argues that the petition lacks a reasonable basis and that counsel's requested fees are "patently excessive and unreasonable under the circumstances." (ECF No. 79, p. 1.)  On the latter point, respondent stresses that current counsel participated in this case for only about 13-months and in that time produced nothing more than updated medical records, ultimately doing "virtually nothing to advance the case."  (*Id*. at 14.)  Thus, respondent argues that the requested fees are "grossly disproportionate."  (*Id*.)  However, respondent does not address any specific aspect of the fees and costs that would warrant reduction.

Regarding the question of reasonable basis, respondent contends that the objective evidence is "so contrary that a feasible claim is not possible."  (*Id*. at 10 (quoting *Cottingham v. Sec'y of Health & Human Servs*., 154 Fed. Cl. 790, 795 (2021)).)  First, respondent contends that any brachial neuritis claim lacks a reasonable basis because petitioner consistently alleged an immediate onset, her symptoms were not limited to her upper extremity nerve plexus, his own expert explained that petitioner's symptoms and NCS/EMG studies were not consistent with brachial neuritis, the evidence overwhelmingly supports cervical compression as the cause of her symptoms, and brachial neuritis was not diagnosed within the contemporaneous medical records.

5

(*Id*. at 10-11.)  He also argues that Dr. Liang's opinion is not credible.[3]  (*Id*. at 11.)  "Here, the objective record evidence has never risen to more than a mere scintilla of evidence in support of brachial neuritis.  The immediate onset allegation alone rendered any brachial neuritis claim dead on arrival."  (*Id*. at 12.)  Conversely, respondent contends the case also never had a reasonable basis for a SIRVA allegation, because only isolated references to bursitis by Dr. Liang ever potentially supported a shoulder-specific diagnosis whereas Dr. Liang otherwise concluded her condition was neurologic.  (*Id*. at 13 (citing Ex. 4, pp. 30, 32; Ex. 16).)  In respondent's view, the later filed medical records showing labral tears and tendinitis do not remedy these issues and, moreover, simultaneous pursuit of brachial neuritis and SIRVA, which are mutually exclusive, is unreasonable.  (*Id*.)

In reply, petitioner's counsel asserts that this case maintained a reasonable basis throughout its pendency, noting in particular that petitioner had secured a treating physician opinion indicating that she had experienced an injury, brachial neuritis, that is recognized by the program.  (ECF No. 80, p. 2.)  However, counsel also contends it was reasonable to also investigate the facts and circumstances originally alleged to be SIRVA.  (*Id*. at 2-3.)  Regarding this uncertainty, petitioner's counsel stresses that even respondent's expert was unwilling to offer a "more likely than not" diagnosis for petitioner's condition.  (*Id*. at 3.)  Thus, petitioner argues that "it was apparent that reasonable minds may disagree on the correct diagnosis."  (*Id*.)  Thus, petitioner had a reasonable basis to explore alternative explanations for petitioner's injury and it was reasonable for petitioner to consult both Drs. Jeret and Srikumaran.  (*Id*. at 3-4.)  Regardless of Dr. Liang's diagnostic opinion, there were medical facts within the medical records to support a SIRVA.  (*Id*. at 4.)  Moreover, counsel owed petitioner the duty of a full investigation of all avenues of recovery.  (*Id*. at n. 3.)  To the extent respondent challenges the requested fees as excessive, petitioner argues that the billing records submitted document that the hours undertaken by counsel were reasonable.  (*Id*. at n. 1.)

### III.    Analysis

### a.  Appropriateness of an Award of Interim Attorneys' Fees and Costs

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and . . . other costs."  § 300aa-15(e)(1)(A)-(B).  Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).  Additionally, the Federal Circuit has concluded that interim fee awards are permissible and

---

[3] Although the undersigned had indicated during the January 3, 2025 status conference that Dr. Liang's letter opinion was likely sufficient to provide a reasonable basis with respect to a brachial neuritis claim, respondent argues that the court's unsupported preliminary finding cannot confer a reasonable basis and that counsel had a duty to assess the claim for reasonable basis, which is informed by the objective evidence of record.  (ECF No. 79, p. 12.)

appropriate under the Vaccine Act, although there is no presumption of entitlement to such fees. *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1374-75 (Fed. Cir. 2010); *Avera*, 515 F.3d at 1352; *McKellar*, 101 Fed. Cl. at 300. In *Shaw*, the Federal Circuit clarified that, "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. The fact that an attorney is withdrawing may be a circumstance that warrants an interim award, but it is not necessarily so. *Compare Wood v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), *with McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 302 (2011).

In this case, the undersigned initially deferred ruling on the first motion for interim attorneys' fees and costs due to prior counsel's premature exit and the low amount at issue. (ECF No. 61.) Additionally, by the time the motion was briefed, counsel had already departed the case. Now, current counsel's motion to withdraw remains pending and the amount(s) at issue are cumulatively much higher. Accordingly, although the case is not expected to remain pending for a prolonged period, the undersigned exercises his discretion to address departing counsel's fees and costs now.

### b. Whether the Case Maintained a Reasonable Basis

Even having concluded that an interim award is appropriate, attorneys' fees and costs can only be awarded "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360-61 (Fed. Cir. 2012), *aff'd sub nom. Sebelius v. Cloer*, 569 U.S. 369 (2013). "Good faith" and "reasonable basis" are two distinct requirements under the Vaccine Act. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017). Good faith is a subjective inquiry, while reasonable basis is an objective inquiry that does not factor subjective views into consideration. *See James-Cornelius ex rel. E.J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021). In this case, good faith is not challenged. (ECF Nos. 57, 79.)

Determining whether there was a reasonable basis for the filing of a petition involves examining the *prima facie* petition requirements of section 300aa-11(c)(1) of the Vaccine Act. *Cottingham ex rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the vaccinee:

(1) received a vaccine listed on the Vaccine Injury Table;

(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;

(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;

(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and

(5) has not previously collected an award or settlement of a civil action for damages for the same injury.

42 U.S.C. § 300aa-11(c)(1).

The evidentiary standard for establishing a reasonable basis as a prerequisite to an award of attorneys' fees and costs is lower than the evidentiary standard for being awarded compensation under the Vaccine Act. *Cottingham*, 971 F.3d at 1346. To establish a reasonable basis for attorneys' fees, the petitioner need not prove a likelihood of success. *See Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2012 WL 4010485, at *5, 6 (Fed. Cl. Spec. Mstr. Aug. 23, 2012). Instead, the special master evaluates whether objective evidence, while amounting to less than a preponderance of evidence, constitutes "more than a mere scintilla" of evidence of the required showing. *Cottingham*, 971 F.3d at 1344, 1346.

Determining what constitutes "more than a mere scintilla" of evidence has been acknowledged to be a "daunting task." *Cottingham v. Sec'y of Health & Human Servs*., 154 Fed. Cl. 790, 795 (2021). The required showing has been characterized as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Id*. (quoting *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 n.3 (4th Cir. 2021)). A special master may look at the totality of the circumstances; however, no specific evidentiary framework is required. *Sheller v. Sec'y of Health & Human Servs*., 121 F.4th 1301, 1306 (Fed. Cir. 2024); *see also Cottingham*, 971 F.3d at 1344, 1346; *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). "More than a mere scintilla" of objective evidence supporting causation can derive from medical records that provide "only circumstantial evidence of causation." *James-Cornelius*, 984 F.3d at 1379-80 (quoting *Cottingham*, 971 F.3d at 1346); *see also Cottingham*, 971 F.3d at 1346 (finding that petitioner's medical records showed, at minimum, circumstantial evidence of causation where petitioner's medical records showed that petitioner received the Gardasil vaccine and subsequently experienced symptoms that were identified in the Gardasil package insert as potential adverse reactions of the vaccine).

When assessing the reasonable basis for a petition, special masters are encouraged to keep in mind "the Vaccine Act's remedial objective of maintaining petitioners' access to willing and qualified legal counsel." *Sheller*, 121 F.4th at 1308-09. Nonetheless, counsel has a duty to avoid frivolous litigation and should use "reasoned judgment in determining whether to . . . pursue a claim." *Murphy v. Sec'y of Health & Human Servs.*, 30 Fed. Cl. 60, 62 (1993), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995). "[T]he [Vaccine] Program's interest in promoting attorney representation in vaccine cases, as contemplated by the attorneys' fees provisions of the statute, must be balanced carefully against the court's examination of the reasonableness of the basis for bringing the vaccine petition." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007

8

WL 4410030, at *11 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  Although counsel has an "ethical obligation to be a zealous advocate," that does not give counsel a "blank check to incur expenses without regard to the merits of [the] claim."  *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34-35 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

In this case, the parties' briefing on the second motion, and especially respondent's response, suggests two different reasonable basis analyses, one relative to the SIRVA alleged in the petition and one relative to the alternative brachial neuritis claim subsequently suggested by petitioner's treating physician.  (ECF No. 79.) However, the reasonable basis inquiry pertains to "the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1).  Although the undersigned suggested that there could be a reasonable basis for a brachial neuritis claim, this was in the context of directing petitioner to amend her pleading if she wished to pursue such a claim and permitting her to retain new counsel to explore whether such an amended claim would be viable.  (ECF No. 52-54.)  However, although petitioner did retain new counsel, she never amended her petition to pursue a brachial neuritis claim.  Accordingly, the dispositive question remains whether the actual petition, which alleged a musculoskeletal shoulder injury, maintained a reasonable basis.

Specifically, when this case was initially filed, petitioner alleged that she suffered a Table Injury of SIRVA.  (ECF No. 1, p. 1.)  In support of that allegation, she further alleged that (1) she was vaccinated in her left arm on August 28, 2020; (2) that she reported 12 days of left arm pain to her chiropractor on September 8, 2020; (3) that, although Dr. Liang first diagnosed neuropathy and cervical radiculopathy, he later changed his diagnosis to bursitis of the left shoulder; (4) that petitioner pursued physical therapy for left shoulder pain reported to have occurred the day after vaccination; and (5) that Dr. Liang later diagnosed an acute rotator cuff injury.  (ECF No. 1, pp. 1-2.) Although respondent raises confounding factors (ECF No. 79, pp. 2-3), all of these points are substantiated by the medical records that have been filed.  (Ex. 1; Ex. 2; Ex. 3, p. 5; Ex. 4, pp. 25-27, 32; Ex. 5, pp. 1-3.)

Of course, clinical evidence of neuropathy is incompatible with a Table SIRVA; however, respondent's argument that the evidence of neuropathy is so contrary to petitioner's claim as to undermine a reasonable basis for her claim understates the degree of uncertainty involved in this case.  Significantly, the instant question is not whether the evidence preponderates in favor of a Table SIRVA, but whether there is at least a mere scintilla of evidence to support the presence of a Table SIRVA.  *See, e.g., Bostic ex rel. K.T. v. Sec'y of Health & Human Servs.*, No. 22-1118V, 2023 WL 4486158, at *5 (Fed. Cl. Spec. Mstr. June 15, 2023) (finding a reasonable basis for a SIRVA claim where "there is also significant medical record evidence reflecting reports of symptoms potentially consistent with a neurologic injury extending beyond the shoulder, which greatly complicates any Table SIRVA claim with regard to the third and fourth criteria.  Importantly, however, none of these symptoms have been confirmed by objective testing and K.T.'s treating physicians have not provided any specific neurologic diagnosis nor ruled out an orthopedic/musculoskeletal injury."); *see also Durham v. Sec'y of Health & Human Servs.*, No. 17-1899V, 2023 WL 3196229, at *14

(Fed. Cl. Spec. Mstr. May 2, 2023) (explaining a petitioner may prove a Table SIRVA even if there is some clinical evidence of neuropathy, if she can nonetheless prove it is not meaningful to her symptoms).

Although Dr. Liang presented a letter opining that petitioner suffered brachial neuritis (Ex. 16), respondent's experts purported to refute that contention (Exs. A, C) and respondent himself argues that Dr. Liang's brachial neuritis diagnosis was not supported by the medical records (ECF No. 79, p. 11).  Indeed, respondent argues that the evidence supporting brachial neuritis does not even rise to the level of a mere scintilla of evidence.  (*Id*. at 12.)  And, while respondent otherwise argues that evidence of another neurologic condition nonetheless undermines any potential SIRVA claim, as petitioner observed in reply (ECF No. 80, p. 3), respondent's neurology expert did not arrive at a more likely than not explanation for the entirety of petitioner's symptoms (Ex.C, p. 7 (opining that the identified conditions "could explain some of her symptoms")).  And, although Dr. Cagle opined that no shoulder diagnosis was supported by the medical records (Ex. A, p. 7), petitioner's subsequently obtained MRI, though years after the fact, did provide objective evidence of shoulder pathology (Ex. 21, p. 15) that potentially supports Dr. Liang's more contemporaneous clinical impression of a rotator cuff etiology.  Respondent is not persuasive in suggesting that the demonstrated pathology, which included tendinitis in addition to labral tears, is in itself confounding of a SIRVA.  42 C.F.R. § 100.3(c)(10) (explaining that SIRVA encompasses injury to the "tendons, ligaments, bursae, etc.").

Accordingly, though obviously contested, involving an unclear diagnosis, and still unlikely to succeed based on the record developed to date, this case has maintained a reasonable basis throughout its pendency to date, even if just barely.

### c. Reasonableness of the Requested Attorneys' Fees

In determining the appropriate amount to be awarded, the Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  *Avera*, 515 F.3d at 1347.  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  *Id*. at 1348.  It is "well within the special master's discretion" to determine the reasonableness of fees.  *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.").  Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond.  *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009).

Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said

work.  *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008).  Such applications should not include hours that are "excessive, redundant, or otherwise unnecessary."  *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  In reviewing fee applications, special masters need not engage in a line-by-line analysis.  *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).  Instead, they may rely on their experience with the program to determine the reasonable number of hours expended.  *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 486 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993).  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications."  *Saxton*, 3 F.3d at 1521.  Attorneys' costs must also be reasonable and sufficiently documented.  *See Perreira*, 27 Fed. Cl. at 34 ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both.  Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.").

### i.  Burdette Law

The undersigned agrees that the hourly rates requested by the Burdette firm are reasonable as a general matter.  *Accord McDaniel*, 2023 WL 4043683, at *2.  However, in this specific case, Ms. Burdette's hourly rate should be reduced to $177 per hour, the lowest available attorney forum rate for 2021, the year Ms. Burdette began billing in this case.[4]  The reason for this is that neither counsel's billing records (ECF No. 55-1), nor her conduct at the January 3, 2025 status conference and related premature exit from the case (ECF No. 54), reflect anything but the most rudimentary of legal experience.  In effect, Ms. Burdette's role was limited to an attempt to collect medical records, file the action, and assert a settlement demand.  Once respondent indicated he would defend the case, Ms. Burdette revealed herself to be either unable or unwilling to prosecute the case further.[5]  (*Id*.)  This results in a reduction of $1,898.26.[6]

---

[4] *See* https://www.uscfc.uscourts.gov/sites/cfc/files/osm_hourly_rate_2021.pdf.

[5] One could reasonably question whether the subsequent history in this case, and especially the departure of a second petitioner's counsel, suggests that the Burdette firm's poor performance was due to extenuating circumstances related to the specific attorney-client relationship at issue.  Indeed, respondent makes a point of arguing that petitioner's second counsel of record likewise made no progress in the case.  (ECF No. 79, p. 14.)  However, the experience of the two firms is distinguishable.  The Burdette firm was responsible for prosecuting this case for nearly four years and in that time never meaningfully sought to substantiate the claim apart from the most basic task of filing medical records and presenting the letter of a treating physician that, on its face, confounded the injury alleged in the petition.  Indeed, Ms. Burdette specifically confirmed to the undersigned her unwillingness to explore retention of any expert at all.  (ECF No. 54.)  By contrast, Mr. Webb, in the span of 13 months, worked with petitioner to work through two different approaches to the case and consulted two different experts in relevant fields.  Accordingly, while he likewise did not file any expert report, the experience of subsequent counsel is not informative of the performance of the Burdette firm.

[6] Counsel's billing records do not include separate totals for each individual who billed on the case.  Based on the undersigned's own tally, Ms. Burdette billed 19.37 hours in the case.  (ECF No. 55-1.)  At

Additionally, most of the billing entries are impermissibly vague. In fact, a majority of the entries are limited to noting that some form of e-mail, text exchange, or interoffice communication had occurred. Moreover, given counsel's apparent unwillingness to grapple with the significant issues in the case over the nearly four-year period reflected in the billing records, the lack of meaningful detail in the billing records cannot be overlooked. Accordingly, a further 10% reduction is warranted, resulting in attorneys' fees of $15,891.34.[7]

    ii. <u>Black, McLaren, et al.</u>

The undersigned agrees that the hourly rates requested by Black, McLaren, et al. are consistent with prior awards and are reasonable.[8] *E.g.*, *Dhital v. Sec'y of Health & Human Servs.*, No. 22-101V, 2025 WL 2401317 (Fed. Cl. Spec. Mstr. July 15, 2025). Additionally, based on a review of the billing records, the hours expended are reasonable as well. In reaching this conclusion, the undersigned has considered respondent's contention that the attorneys' fees generated were excessive and disproportionate. (ECF No. 79, p. 14.) However, respondent did not include any objection "with particularity." Vaccine Rule 13(a)(3). Moreover, while respondent suggests that the fees are unusually high, the lack of diagnostic clarity in this case means that it is significantly more involved and challenging than a typical SIRVA case. Indeed, petitioner's counsel reasonably explained in his reply that, once prior counsel introduced Dr. Liang's brachial neuritis diagnosis, which respondent in turn disputes is supported by the medical records, it became incumbent upon counsel to investigate both the musculoskeletal and neurologic approaches to the case. (ECF No. 80.) Additionally, the undersigned believes that respondent's concern is answered at least in part by the fact that the change in counsel necessitated by prior counsel's premature exit likely resulted in unavoidable inefficiencies and delayed necessary investigation into the underlying scientific and medical merits of the claim, points addressed by the above-discussed cuts to the Burdette firm's billing.

---

$275 per hour, this would total $5,326.75. At $177 per hour, this would total $3,428.49, a difference of $1,898.26.

[7] After the initial reduction relative to Ms. Burdette's hourly rate, total attorneys' fees are $17,657.04. Reduced by 10%, that total comes down to $15,891.34.

[8] To the undersigned's knowledge, no prior decision has addressed this firms 2026 hourly rates. Indeed, the instant motion was filed prior to OSM's publication of the 2026 form rate chart. For purposes of this decision, the undersigned concludes that it was reasonable for counsel to do his own calculation using the PPI-OL to estimate a reasonable 2026 rates; however, the specific PPI-OL index used by counsel (September 2025) is not the same as the index that was ultimately used for the 2026 forum rate chart (July 2025). *See* https://www.uscfc.uscourts.gov/sites/cfc/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202026.pdf. Accordingly, acceptance of the requested 2026 rates in this decision should not be taken as any indication of how counsel's rates will ultimately be adjudicated under the subsequently issued 2026 rate schedule.

Accordingly, the undersigned finds that the attorneys' fees requested, totaling $73, 014.40, are reasonable and should be awarded in full.

### d. Reasonableness of the Requested Attorneys' Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira*, 27 Fed. Cl. at 34. Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Human Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013).

Based on my review of the billing records for both firms, I conclude that all of the requested costs were reasonably incurred. Respondent did not challenge any of the costs incurred by the Burdette firm within the first motion, which total only $2,732.63. And again, although respondent challenged the overall total for attorneys' fees and costs within the second motion, he did not include any objection "with particularity" and did not include any argument with specific respect to the requested costs. Vaccine Rule 13(a)(3).

Respondent's argument that it was unreasonable to explore both brachial neuritis and SIRVA simultaneously is not persuasive in light of the procedural history and for the reasons discussed in petitioner's reply (ECF No. 80). But in any event, this concern is not necessarily dispositive of the reasonableness of consulting both a neurologist and an orthopedist to discuss the diagnostic issue. Afterall, respondent filed reports by both a neurologist and orthopedist opining as to the presence of certain potentially confounding neurologic conditions, as well as disputing that a shoulder injury was present. Accordingly, both reports could reasonably warrant rebuttal regardless of whether petitioner pursued a brachial neuritis or musculoskeletal injury claim. And, importantly, the hourly rates requested by both experts are reasonable. *E.g.*, *Baker v. Sec'y of Health & Human Servs.*, No. 21-1869V, 2025 WL 1513417, at *4 (Fed. Cl. Spec. Mstr. Apr. 29, 2025) (collecting cases accepting Dr. Jeret's rate of $500 per hour); *Aycock v. Sec'y of Health & Human Servs.*, No. 19-235V, 2023 WL 8869432 (Fed. Cl. Spec. Mstr. Nov. 8, 2023) (finding $1,000 per hour is a reasonable rate for Dr. Srikumaran). *But see, e.g.*, *Crawford v. Sec'y of Health & Human Servs.*, No. 19-544V, 2024 WL 5321766, at *3 (Fed. Cl. Spec. Mstr. Dec. 9, 2024) (distinguishing *Aycock* and awarding a lesser rate due to inefficiency). Moreover, based on a review of the invoices, the hours billed were reasonable.

## IV.   Conclusion

In light of the above, petitioner's first motion for an award of interim attorneys' fees and costs is **GRANTED in part and DENIED in part**. The motion is granted to the extent that an interim award is made, but denied to the extent that attorneys' fees are awarded in a reduced amount. Petitioner's second motion for an award of interim attorneys' fees and costs is **GRANTED,** and the requested attorneys' fees and costs are

awarded in full.  Thus, petitioner is awarded interim attorneys' fees and costs in the total amount of **$110,559.06** as follows:

- A lump sum of **$18,623.97**, representing reimbursement of attorneys' fees and costs, to be paid through an ACH deposit to petitioner's former counsel of record, Ms. Kelly Burdette's IOLTA account for prompt disbursement; and

- A lump sum of **$91,935.09**, representing reimbursement of attorneys' fees and costs, to be paid through an ACH deposit to petitioner's former counsel of record, Mr. Christopher Webb's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[9]

**IT IS SO ORDERED.**

<u>**s/Daniel T. Horner**</u>
Daniel T. Horner
Special Master

---

[9] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).